## H. T. SMITH CO. v. MINETTO-MERIDEN CO.

### (Circuit Court, D. Connecticut. March 16, 1909.)

### No. 717.

**1. DAMAGES (§ 22*)—MEASURE OF DAMAGES—BREACH OF CONTRACT—FAILURE TO PERFORM.**

In an action for breach of an executory contract for the hiring of teams from plaintiff for a stated term, an excessive price alleged to have been paid by plaintiff to defendant for a teaming outfit in reliance on such contract does not constitute an element of the damages recoverable.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 22.*]

**2. COURTS (§ 372*)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.**

The right of a party to an executory contract, on the refusal of the other party to perform, to sue for and recover his entire damages for the breach, without waiting for the expiration of the time for performance, is a question of general law, upon which the federal courts are not bound by the rule of the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. § 372.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**3. DAMAGES (§ 28*)—BREACH OF CONTRACT.**

It is the rule of the federal courts that, upon the absolute refusal of one party to an executory contract to perform, the other party may at once sue for and recover the damages which he has already sustained, and also such as he can show by competent evidence with reasonable certainty will result to him thereafter by reason of the breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 70; Dec. Dig. § 28.*]

At Law. On demurrer to complaint.

Fay & Clark, for plaintiff.

Gross, Hyde & Shipman, for defendant.

PLATT, District Judge. The complaint in this case sets forth a cause of action based upon the breach of an executory contract. The gist of the contract is that the plaintiff agreed to furnish two teams for the exclusive use of the defendant in hauling merchandise during every working day for a period of five years from October 16, 1906, and the defendant agreed to pay the plaintiff $112 each month for such

service. If the defendant used the teams for carting coal, the plaintiff was to have 50 cents per long ton in addition, after making certain rebates and allowances. It is alleged in paragraph 5 of the complaint that on or about July 1, 1908, the defendant closed up its factories in Meriden, and moved its plant and business out of the state, and "refused to further perform the said agreement on its part to be performed." After alleging its own constant willingness to perform the contract, the plaintiff claims $3,800 damages.

Defendant wished to know a little more about the plaintiff's theory of damage, and so, in response to a motion for a more specific statement, the plaintiff filed an amendment to its complaint, stating four reasons for claiming said amount of damage, viz.:

"(1) That, as a part of the consideration of the agreement set forth in the complaint, defendant sold to plaintiff, and plaintiff purchased of defendant, the defendant's teaming outfit mentioned in paragraph 6 of said agreement, and plaintiff paid therefor the sum of $3,957.24.

"(2) Said sum of (is?) $1,300 in excess of the value of said teaming outfit, and plaintiff would not have purchased the same, except as a part of the consideration of said agreement described in the complaint, and in preparation to execute the same.

"(3) Plaintiff by reason whereof has been damaged in the sum of $1,300, being the difference between said sum of $3,957.24, paid by plaintiff for said property, and the value thereof.

"(4) Plaintiff, by reason of defendant's failure and refusal to fulfill said agreement, has been damaged by the loss of the profits on the two teams mentioned in paragraph 2 of said agreement, from July 1, 1908, to October 15, 1911, in the sum of $2,500."

It will be seen that the first three paragraphs explain the basis upon which the plaintiff expects to rest its demand for a part of the $3,800, viz., $1,300. The substance of it is that it made a bad trade with the defendant, because it supposed, when it bought a teaming outfit of the defendant, that it could use said outfit in carrying out the contract which has been broken. The only reference in the contract to a teaming outfit is in paragraph 6. It is there provided that the defendant herein, who was the second party in the contract, could terminate the contract at any time upon 30 days' notice, if its directors thought it necessary or proper to do so; their judgment thereon to be conclusive and binding upon both parties. The paragraph then goes on to say that such a termination shall—

"in no way affect the indebtedness of the first party to the second party arising out of the sale this day made of the teaming outfit by the second party to the first party."

This is the argument as I gather it: That, because it has been specially provided in the contract that its termination by a method therein provided for shall have no bearing upon a certain horse trade concluded before the contract was executed, it follows that a termination of the contract by the defendant in any other way shall bring the horse trade and its details into full operation as a basis for damage. The logic is not persuasive, and the first cause of demurrer, which is directed against the relief demanded, as enlarged and explained by the first three paragraphs of the more specific statement, is therefore sustained.

The second cause of demurrer is directed against the relief demanded, as enlarged and explained by the fourth paragraph of the more specific statement. It proceeds in the first instance upon the theory that since, in Connecticut, it is the settled law that when, during the lifetime of a contract, one party refuses to perform, the other party must wait until the time for execution has expired before he can recover his entire damage, it is the duty of the federal court to take the same position. This, however, is a question of general law, and one about which the federal court is entitled to use its own independent judgment.

I understand that in the federal courts at large, and certainly in this jurisdiction, the law is well settled that in such a contract as this one an absolute refusal by one party to perform may be accepted by the other, and he may thereupon recover such damages as he can show to have resulted to him when the suit was brought on account of the breach, and such further damage as he can by competent and relevant testimony show will be likely to result to him thereafter, up to the time fixed in the contract for its completion. On the trial he must produce such evidence as will enable the jury to reach a reasonably accurate conclusion as to the prospective damage. Whether it can do so or not remains to be found out at the trial. It would be wrong to prevent the plaintiff from making the attempt by sustaining the second cause of demurrer.

The second cause of demurrer is overruled.